```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
35-41 CLARKSON LLC, 2600 CRESTON AVE
OWNER LLC, MDRJ, LLC, MMIKP, on behalf
of themselves and all others similarly situated,

                        Plaintiffs,                           11 Civ. 6770 (PKC)

        -against-                                             MEMORANDUM
                                                              AND ORDER

NEW YORK CITY HOUSING AUTHORITY,

                        Defendant.
-----------------------------------------------------------x
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-30-12

P. KEVIN CASTEL, District Judge:

        Plaintiffs, landlords participating in the U.S. Department of Housing and Urban Development's ("HUD") Section 8 housing program, bring this putative class action against the New York City Housing Authority ("NYCHA") alleging NYCHA's non-compliance with the federal statute (42 U.S.C. § 1437f) and regulations (24 C.F.R. Part 982) governing the Section 8 program, as well as NYCHA's own policies and the contracts entered into between each plaintiff and NYCHA in connection with the Section 8 program. Plaintiffs allege that NYCHA's non-compliance constitutes a denial of plaintiffs' Fourteenth Amendment procedural due process rights that is actionable under 42 U.S.C. § 1983. Additionally, plaintiffs allege that 42 U.S.C. § 1437f and 24 C.F.R. Part 982 create a private right of action under which plaintiffs may assert their claims. Finally, and in the alternative, plaintiffs allege a state-law claim for breach of contract.

        NYCHA moves to dismiss the amended complaint, arguing that plaintiffs' allegations amount merely to a state-law contract dispute over which the Court lacks subject matter jurisdiction, that the amended complaint fails to state a claim under 42 U.S.C. § 1983, and

that there is no private right of action under 42 U.S.C. § 1437f or 24 C.F.R. Part 982. NYCHA asks that the Court decline to exercise supplemental jurisdiction over the contract claim.

Separately, Section 8 tenants Xiomara Torres, Alexsandra Nesaty, and Samuel Starker, on behalf of themselves and others similarly situated, move to intervene pursuant to Rule 24, Fed. R. Civ. P.

For the reasons set forth below, the amended complaint fails to state a claim upon which relief can be granted, and NYCHA's motion to dismiss the amended complaint is therefore granted. The motion to intervene is denied as moot.

## BACKGROUND

The following facts are taken from the amended complaint and assumed to be true for the purposes of deciding this motion.

Pursuant to Section 8 of the United States Housing Act of 1937, NYCHA acts as a Participating Housing Authority ("PHA") and enters into Housing Assistance Payment ("HAP") contracts with participating landlords, under which NYCHA provides payments directly to landlords to subsidize the cost of housing for low-income tenants. (Compl. ¶¶ 9, 12.) An agency of the City of New York, NYCHA is responsible for overseeing more than 95,000 Section 8 housing units. (Id. ¶¶ 8, 10.) Each named plaintiff is a New York limited liability company that operates rental properties in New York City that participate in the Section 8 program through HAP contracts with NYCHA. (Compl. ¶¶ 3-6.) The HAP contracts between NYCHA and each plaintiff run concurrently with the lease term, and each provides that NYCHA "must pay housing assistance payments promptly when due to the owner." (Id. ¶¶ 25, 27.)

NYCHA's obligation to make payments to landlords is conditioned upon exercise of its rights with respect to Housing Quality Standards ("HQS"). Under the HAP contracts,

NYCHA has the right to inspect Section 8 units and premises as it deems necessary to ensure compliance with HQS. (Id. ¶ 29.) If NYCHA "determines that a breach has occurred, NYCHA may exercise any of its rights and remedies under the HAP contract" and "shall notify the owner of such determination." (Id. ¶ 30.) NYCHA "shall not make any housing assistance payments if the contract unit does not meet the HQS, unless the owner corrects the defect within the period specified by the PHA [NYCHA] and the PHA [NYCHA] verifies the correction." (Id. ¶ 28 (brackets in amended complaint).)

NYCHA's public website explains that landlords may avoid rent suspensions due to HQS violations by correcting the violation within 30 days of the inspection, and that NYCHA may be informed of such corrections either by a joint certification by the landlord and tenant or by re-inspection. (Id. ¶¶ 59-61.) Even if the HQS violation is not corrected within 30 days, NYCHA states that the owner has the right to cure the HQS violation and resume receipt of rent payments if NYCHA receives a certification of repair by the tenant and owner (a "Joint Verification") or if NYCHA conducts a satisfactory re-inspection. (Id. ¶ 62.) In either case the "payments will resume retroactive" to the date of re-inspection, Joint Verification, or the date of repair if properly documented. (Id. ¶ 63.)

Contrary to the requirements of its HAP contracts with plaintiffs, NYCHA, upon identifying HQS violations at Section 8 units owned by plaintiffs, failed to notify plaintiffs of these violations in a timely manner. (Id. ¶¶ 66, 67.) Further, after plaintiffs became aware of violations and remedied them, NYCHA failed to follow its procedures allowing plaintiffs to cure the violations prior to suspension of rent payments, failed to pay plaintiffs rent payment after receiving Joint Verifications, failed to conduct re-inspections of plaintiffs' units within the time periods stated in NYCHA's policy, failed to follow its policy of re-instating plaintiffs' units after

HQS violations were remedied, and failed to reinstate rent payments retroactively to the date of the completed work order or Joint Verification. (Id. ¶¶ 68-75.) NYCHA has no grievance procedure for owners to challenge these failures. (Id. ¶ 64.)

NYCHA has also failed to comply with its own policies and procedures regarding rent increases. According to NYCHA's public website and its "Landlord Request for Lease Renewal Approval" form, owners may request a rent increase for a particular unit upon expiration of a lease. (Id. ¶¶ 32-35.) Such increases will generally be based on the percentage increase permitted by the New York City Rent Guidelines Board unless the owner seeks a larger increase and attaches supporting documentation, which will be assessed under the "rent reasonableness" standard. (Id. ¶ 35.) Plaintiffs have applied for rent increases in conjunction with renewed leases, but NYCHA has failed to raise rents. (Id. ¶ 36-42.) Landlords may also seek rent increases after completing Major Capital Improvements or Individual Apartment Improvements. (Id. ¶¶ 45-57.) Plaintiffs have applied for such increases but NYCHA has not approved or denied those requests. (Id.) NYCHA has no grievance procedure to challenge its failure to raise rents. (Id. ¶ 43.)

## DISCUSSION

I. Pleading Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing plausibility, courts draw all reasonable inferences in favor of the non-movant. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). Legal conclusions, however, are not entitled to any presumption of truth,

and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id.

"[O]n a motion to dismiss, a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit,'" although "mere notice or possession is not enough" absent plaintiff's reliance on such documents. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (omissions in Chambers). A court may also consider "[a]n affirmative defense . . . raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998).

II. Due Process Claims

Plaintiffs assert two claims under 42 U.S.C. § 1983, each alleging the denial of procedural due process. Plaintiffs allege first that NYCHA deprived them, without due process, of rent increases to which they were entitled, and second that NYCHA denied plaintiffs rent payments owed to them after correcting HQS violations, again without affording plaintiffs due process. (Compl. ¶¶ 89-106.) Under Section 1983, "[e]very person who, under color of [state law], subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Thus, it is a prerequisite for a Section 1983 claim that the plaintiff has a federal right. See Gonzaga Univ. v. Doe, 536 U.S. 273, 283 (2002).

Here, plaintiffs invoke their Fourteenth Amendment right to procedural due process. U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."). In assessing plaintiffs' due process claims, the court asks first whether plaintiffs were deprived of a property or liberty interest protected by the Due Process Clause, and then, if so, whether plaintiffs were accorded due process in connection with the deprivation of liberty or property. See Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev., 959 F.2d 395, 404 (2d Cir. 1992). As discussed below, it is perhaps a close question whether plaintiffs have adequately asserted a property right that is capable of protection under the Due Process Clause. The Court need not resolve this issue, however, because, even assuming plaintiffs assert a protected property right, post-deprivation proceedings in state court afford plaintiffs all the process that is due under the Fourteenth Amendment.

   a. Do Plaintiffs Allege A Protected Liberty Or Property Interest?

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). Plaintiffs do not contend that they have been deprived of a liberty interest, so the Court will address only whether plaintiffs assert a property right within the ambit of the Due Process Clause.

As a threshold matter, "[p]roperty interests . . . are not created by the Constitution," but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Id. at 577. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a

legitimate claim of entitlement to it." Id.  Such entitlements have been found in a variety of contexts, including "state-conferred benefits and services" such as welfare benefits, disability benefits, public education, utility services, government employment, and "other entitlements that defy easy categorization." Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 790 (2005) (Stevens, J., dissenting) (collecting cases).

Plaintiffs contend that "[t]he HAP contract, HUD Regulations, and NYCHA's administrative plan create a regime under which NYCHA must pay rent to owners."  (Pl. Br. 11.) It is apparent, however, that plaintiffs would have no entitlement to rents but for the HAP contracts they have entered into with NYCHA, as no landlord is entitled to rents without a HAP contract, and there is no right to enter into such a contract.  The statutory provisions at issue confer no rights upon the general public, nor upon landlords in particular.  The statute merely permits the Secretary to "provide assistance to public housing agencies for tenant-based assistance," and mandates many aspects of how this program must operate where it is implemented.  42 U.S.C. § 1437f(o)(1)(A).  The same is true of the implementing regulations, which, even assuming they could confer property rights protected by the Due Process Clause, state that "[n]othing in this rule is intended to give any owner any right to participate in the program."  24 C.F.R. § 982.306(e).  A landlord may have certain rights derived from its HAP contract, the terms of which are defined in part by the controlling statute and regulations, but that is not to say that these rights derive from federal law, as opposed to ordinary principles of contract.  Accord Khan v. Bland, 630 F.3d 519, 529 (7th Cir. 2010), cert. denied, 132 S. Ct. 754 (2011) ("[Landlord] has not pointed to any provision of the contract, federal law, or state law that would entitle him to continued participation in the Section 8 program beyond performance of his existing contracts."); Roth v. City of Syracuse, 96 F. Supp. 2d 171, 178 (N.D.N.Y. 2000), aff'd,

4 Fed. App'x 86 (2d Cir. 2001) (Landlord "plaintiffs have failed to establish that they have a cognizable property right or interest in continued participation in the Section 8 housing program."). Thus, plaintiffs' property rights, if any, derive from the HAP contracts they have entered into with NYCHA.[1]

The Second Circuit considered "the circumstances under which a governmental contract may be said to create a property interest protected by procedural due process" in S & D Maintenance Co. v. Goldin, 844 F.2d 962, 963-64 (2d Cir. 1988), concluding that a contract to maintain New York City's on-street parking meters for a two-year period did not "create a constitutionally protected property interest." The court noted that "the doctrinal implications of constitutionalizing all public contract rights would raise substantial concerns," and therefore drew a distinction between cases where due process is invoked to protect "an ordinary contractual right" and those where "procedural protection is sought in connection with a state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits." Id. at 966. S & D also relied on the specific contractual language at issue, noting that the contract's terms left the government significant discretion in making payments. Id. at 969.[2]

---

[1] This is not a case where a landlord's participation in a housing program is mandatory. Cf. Kraebel, 959 F.2d at 399. Although New York City landlords participating in the Section 8 program may be required, when renewing rent-stabilized leases, to renew such leases on the same terms and conditions as the expired lease, including acceptance of Section 8 subsidy payments, this obligation arises by operation of state law. See Rosario v. Diagonal Realty, LLC, 8 N.Y.3d 755 (2007).

[2] Subsequent cases have adhered to the line drawn in S & D that ordinary commercial contracts with the government do not create property rights protected by the Due Process Clause. See Martz v. Incorporated Village of Valley Stream, 22 F.3d 26, 31 (2d Cir. 1994); Walentas v. Lipper, 862 F.2d 414, 418 (2d Cir. 1988) ("[I]t is relatively clear that a contract dispute, in and of itself, is not sufficient to give rise to a cause of action under section 1983.").

Here, the HAP contracts defy easy categorization as either ordinary commercial contracts or entitlements subject to protection under the Due Process Clause. Although the HAP contracts do not embody a status of either permanence or extreme dependence, they are not one-off commercial interactions, but integral aspects of a federal scheme to provide better housing to low-income tenants. It is also difficult to assess the degree of discretion vested in NYCHA under the HAP contracts, which require that NYCHA make rent payments to landlords while leaving the agency some discretion in determining HQS violations and setting reasonable rents. For the reasons discussed below, however, the Court need not determine whether the HAP contracts confer more than "an ordinary contractual right," S & D, 844 F.2d at 966, nor the precise amount of discretion vested in NYCHA. Even assuming the HAP contracts create rights protected by the Due Process Clause, plaintiffs are only entitled to the post-deprivation proceedings available in state court.

      b. How Much Process Is Due?

Even assuming that plaintiffs have a property interest protected by the Due Process Clause, it does not necessarily follow that plaintiffs are entitled to any process beyond a post-deprivation action in state court. The need for a pre-deprivation hearing (and for procedural due process in general) is assessed in light of the three factors enunciated in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest, (2) the risk of an erroneous deprivation (and the value of additional safeguards), and (3) the government's interest. The court in S & D suggested in dicta that "even if all public contract rights warranted the procedural protections of due process, there would be a substantial argument that in most circumstances post-deprivation state court remedies would provide all the process that is due." 844 F.2d at 966.

9

This proposition is supported by the Mathews factors as well as relevant Supreme Court and Second Circuit case law, and it is therefore adopted on the facts of this case.

In Lujan v. G & G Fire Sprinklers, Inc., 532 U.S. 189 (2001), the Supreme Court held that a breach-of-contract suit in state court provided sufficient process for a government contractor alleging that state agencies had improperly withheld payments to which the contractor was entitled under a government public works contract. Reviewing cases in which the Court had held that a pre-deprivation or prompt post-deprivation hearing was required, the Court concluded that in each case where such procedures were required, "the claimant was denied a right by virtue of which he was presently entitled either to exercise ownership dominion over real or personal property, or to pursue a gainful occupation." Id. at 196. The Court reasoned that the plaintiff's contractual right to payment, even assuming it constituted a property interest protected by the Due Process Clause, was "an interest, unlike the interests discussed above, that can be fully protected by an ordinary breach-of-contract suit." Id. Notably, the Court came to this conclusion while recognizing that "[l]awsuits are not known for expeditiously resolving claims, and the standard practice in breach-of-contract suits is to award damages, if appropriate, only at the conclusion of the case." Id. at 197.

Similarly, the Second Circuit held in Campo v. N.Y.C. Emp.'s Ret. Sys., 843 F.2d 96 (2d Cir. 1988), that where a plaintiff challenges the failure of a state agency to pay amounts allegedly owed under a contractual obligation, due process may be satisfied by the availability of a post-deprivation proceeding in state court. The plaintiff in Campo alleged that the City erroneously failed to pay her survivor's benefits under her deceased husband's pension plan, such plans being considered contractual relationships under the New York Constitution. Id. at 103 n.7. The Second Circuit affirmed the district court's holding that, even assuming the

plaintiff had a property interest in her husband's pension that was protected by due process, the availability of a post-deprivation proceeding under Article 78 of New York's Civil Practice Law and Rules ("CPLR") to challenge the administrative decision, as well as the possibility of a common-law contract action for damages, fully satisfied due process. Id. at 100 ("Because a judicial hearing in a state court was available to [the plaintiff] on timely demand, due process requirements for a post-deprivation hearing are met."). This was true notwithstanding that such an action may have been barred by the four-month statute of limitations applicable to Article 78 proceedings. Id. at 102 n.6.

The questions that may be raised in an Article 78 proceeding are limited but include review of "whether the body or officer failed to perform a duty enjoined upon it by law," "whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction," "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed," and "whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence." CPLR § 7803. These options encompass plaintiffs' claims here, which primarily allege NYCHA's failure to process and approve (or otherwise respond to) plaintiffs' requests for rent increases or resumption of payments following suspension due to a HQS violation—each an alleged failure to act in accordance with a "duty enjoined upon it by law." Id.

Plaintiffs argue that the cases "where the plaintiffs tried to employ Article 78 proceedings were each denied because they were not filed within 120 days of suspension of payment by NYCHA." (Pl. Br. 17.)  But "the fact that limitations may or may not have run in

11

connection with [plaintiffs'] exercise of [their] rights in a state court does not mean that [plaintiffs have] not been afforded an appropriate due process opportunity." Campo, 843 F.2d at 103 n.7. Plaintiffs also posit that "the cost of bringing an Article 78 action is likely more than the cost of a rent increase or amount of lost rent" and that "allowing NYCHA to proceed on an *ad hoc* basis, adjudicating against individual Plaintiffs for each unit, can result in inconsistent rulings and treatment of a group by a government body," urging that a class action under Rule 23, Fed. R. Civ. P., is therefore needed. (Pl. Br. 18.) While the procedural vehicle of class certification under Rule 23 may provide attractive efficiencies, the premise of any class action in federal court is that the class representatives have stated a claim for relief. Here, plaintiffs have not.

Plaintiffs' remedies in state court may not be limited to an Article 78 proceeding. Plaintiffs may also have a breach-of-contract claim that may be asserted in state court. The New York Court of Appeals has "recognized that 'there are circumstances in which the same governmental action may constitute a violation of contract and also be of a character that would support a claim for article 78 relief.'" Abiele Constr. Inc. v. N.Y.C. School Constr. Auth., 91 N.Y.2d 1, 7 (1997) (citation omitted). "[W]here the language of the complaint asserts violations of a plaintiff's rights under a contract and the primary thrust of the allegations is in contract, a plenary action sounding in contract is the appropriate remedy." Id. at 8. The Court expresses no opinion as the merits of such a contract claim nor as to whether plaintiffs' claims are more appropriately addressed by an Article 78 proceeding or a plenary action for breach of contract. It is sufficient to state that at least one avenue, an Article 78 proceeding, is available and that the constitutional requirement of Due Process is satisfied.

In sum, each Mathews factor councils in favor of holding that a post-deprivation state-court action is sufficient to satisfy due process here. The private interests at stake are not insignificant, but they are purely monetary. Section 8 landlords such as plaintiffs are free, with limited exceptions, to rent to non-Section 8 tenants when their Section 8 leases expire, and whatever interests plaintiffs have in their existing HAP contracts can be fully protected by ordinary breach-of-contract suits or Article 78 proceedings. The public interest, in contrast, is quite substantial, given that NYCHA oversees thousands of Section 8 leases in New York City and could therefore only provide pre-deprivation hearings at considerable time and expense. Finally, the risk of erroneous deprivation from an Article 78 proceeding or plenary action for breach of contract is minimal. Accordingly, the availability of these post-deprivation proceedings satisfies due process.[3]

III. Private Right Of Action

Plaintiffs also allege a claim under 42 U.S.C. § 1437f and 24 C.F.R. Part 982 (Compl. ¶¶ 107-111), arguing that "[t]hough there is no explicit language in the statute granting a private right of action, a private right of action can be implied from the statute." (Pl. Br. 19.) "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. Univ. of Chicago, 441 U.S. 677, 688 (1979). "The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 15 (1979). "The judicial task is to

---

[3] Accord Khan, 630 F.3d at 532 ("A postdeprivation process is appropriate in this case because Khan is not being deprived of his ability to rent housing to other tenants, only his ability to rent under the [Section 8] program. He can still pursue his occupation as a landlord; his need to remedy the deprivation is not particularly time sensitive.").

interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Alexander v. Sandoval, 532 U.S. 275, 286 (2001).

The Supreme Court has looked to four factors in evaluating whether there is congressional intent to create a private right of action under a statute:

> "First, is the plaintiff one of the class for whose especial benefit the statute was enacted . . . . Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?"

Cort v. Ash, 422 U.S. 66, 78 (1975) (internal citations and quotation marks omitted). This four-factor test "reflects a concern, grounded in separation of powers, that Congress rather than the courts controls the availability of remedies for violations of statutes." Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 508 n.9 (1990).

As other courts have concluded in addressing whether Section 8 allows suits by tenants, the relevant "provisions of the Housing Act lack any individualized focus; they speak instead to the public housing agency." Bose v. City of New York, No. CV-07-2431, 2008 WL 564761, at *6 (E.D.N.Y. Feb. 27, 2008) (adopting Report and Recommendation). Neither the text of the statute nor that of the regulations contains rights-creating language, and hence neither implies a private right of action that may be asserted by landlords against a PHA. Application of the Cort factors confirms this.

Regarding the first factor, plaintiffs contend that they are benefited by the statute because "[t]he statute and the regulations create a property right for Plaintiffs to receive rents from their existing contracts." (Pl. Br. 20.) As noted, however, plaintiffs point to no additional

14

rights conferred by the statute or regulations that are not already provided by the HAP contracts. Even if the statute itself can be taken to directly confer some benefits on participating landlords, there can be no question that the statute was not enacted for the "especial benefit" of landlords. Section 1437f states that it allows for assistance payments, not to aid landlords, but "[f]or the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a). Moreover, the implementing regulations state that "[n]othing in this rule is intended to give any owner any right to participate in the program." 24 C.F.R. § 982.306(c)(1)-(7).

    Regarding the second factor, plaintiffs point to 24 C.F.R. § 982.1, which states the "purpose" of the Section 8 program. (Pl. Br. 21.) But the purpose expressed in the regulation— "so eligible families can afford decent, safe and sanitary housing"—only undermines plaintiffs claim because it focuses on tenants, not landlords. 24 C.F.R. § 982.1(a)(1). Plaintiffs also note that tenants, unlike landlords, are specifically barred from bringing suit by 24 C.F.R. § 982.456. As an initial matter, Section 982.456 is primarily concerned with tenants' rights (or lack thereof) as third-party beneficiaries under HAP contracts, making clear that tenants may only pursue whatever rights they have under their leases with landlords. 24 C.F.R. § 982.456(c) ("The HAP contract shall not be construed as creating any right of the family or other third party (other than HUD) to enforce any provision of the HAP contract, or to assert any claim against HUD, the PHA or the owner under the HAP contract."). Even if Section 982.456 does deny tenants a private right of action under the statute, it does not follow by negative implication that landlords do have a private right of action. The more reasonable inference is that the prospect of a private right of action on behalf of landlords was so far afield as to not warrant mention.

Plaintiffs make similar arguments concerning the statute's purpose, contending that a private right of action would not be "inconsistent" with the legislative scheme and that, since Congress provided a grievance procedure for tenants but not for landlords and denied tenants a private right of action, "it is reasonable to conclude that had Congress desired to preclude landlords from a private right of action, Congress would have specifically included a regulatory scheme in the statute." (Pl. Br. 21-22.) The opposite reading is the more natural one. The statute is more solicitous of tenants' rights, and yet it still denies them a private right of action; hence, landlords cannot fare any better.

Finally, plaintiffs' contention that they "bring an action for repeated and pervasive violations of their federal rights as conferred by statute" is doubtful. (Pl. Br. 22.) Plaintiffs do not plausibly allege more than breaches of their HAP contracts—the only source from which they derive any rights under the Section 8 program. Such breach-of-contract claims are "traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." Cort, 422 U.S. at 78. Although interpretation of plaintiffs' HAP contracts, in an Article 78 proceeding or otherwise, may require reference to federal law, this fact alone is not sufficient to create a private right of action.

## IV. The Court Declines To Exercise Supplemental Jurisdiction

Section 1367 of Title 28 of the United States Code governs the exercise of supplemental jurisdiction and states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Subsection (c)(3) further states that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Second Circuit has made clear that the Court's discretion "is not boundless." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity—the 'Cohill factors.'" Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n.7.

Because plaintiffs' federal claims are herein dismissed and none of the Cohill factors supports exercising supplemental jurisdiction over the remaining state-law claim for breach of contract, that claim is dismissed without prejudice.

V. Motion To Intervene

Because plaintiffs' federal claims are dismissed for failure to state a claim upon which relief can be granted, and because the Court declines to exercise supplemental jurisdiction over plaintiffs' alternative claim for breach of contract, the motion to intervene is denied as moot.

## CONCLUSION

For the foregoing reasons, NYCHA's motion to dismiss the amended complaint (Docket No. 13) is GRANTED. The breach-of-contract claim is dismissed without prejudice because the Court declines to exercise supplemental jurisdiction. The motion to intervene (Docket No. 19) is DENIED as moot. The Clerk is directed to enter judgment for defendant.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
November 29, 2012